**BOWLING GREEN–WARREN COUNTY AIRPORT BOARD, Appellant,**

v.

**BRIDGES AIRCRAFT SALES & SERVICE, INC., et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 20, 1970.

---

DAVIS, Commissioner.

The question on appeal is whether appellant, Bowling Green-Warren County Airport Board (Board), may impose a charge of 2½¢ per gallon on all aviation fuels delivered by Standard Oil Company (Standard) to Bridges Aircraft Sales & Service, Inc., (Bridges) for sale to patrons of Bridges on the airport property. This appeal is prosecuted from the judgment which declared that the Board has no legal authority to impose the charge.

The Board is a municipal corporation established pursuant to the enablements of KRS 183.133. On April 13, 1963, the Board and Bridges subscribed an agreement and lease, having minimal duration of ten years, by the terms of which Bridges covenanted to pay the Board $400 per month. For that agreed consideration the Board demised to Bridges the exclusive use of designated portions of the Board's airport facilities, particularly including:

"New, Operators Flite Service Station— 30′ x 60′; and New Gas Pump Servicing Ramp."

Without undertaking a detailed analysis of the agreement between the Board and Bridges, it is enough to say that the Board granted Bridges the "concession" rights at the airport; in turn, Bridges covenanted to afford appropriate services and supplies as such concessionaire.

Henry J. Potter, Jr., G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellant.

Whayne C. Priest, Jr., Harold Ricketts, Bowling Green, Charles G. Middleton, Jr., Edwin G. Middleton, Middleton, Seelbach, Wolford, Willis & Cochran, W. Robinson appellee.

W. Robinson Beard, T. Kennedy Helm, Jr., Stites & McElwain, Louisville, for amicus curiae.

On June 14, 1968, Standard and Bridges entered into a document designated as "Airport Dealer Agreement," by the terms of which Standard agreed to furnish and Bridges agreed to purchase from Standard the requisite aviation fuels and lubricants for use or resale by Bridges at the Board's airport. The agreed price for the merchandise was the normal posted tank-wagon price for the product at the time and place of delivery. The term of the agreement was fixed at five years, with certain options not pertinent to this opinion.

On November 14, 1968, while the lease agreement between Board and Bridges was in full effect, as was the "Airport Dealer Agreement" between Bridges and Standard, the Board adopted and published comprehensive "Rules and Regulations," as permitted by KRS 183.133(6). The critical portion of those rules and regulations is No. 700, which provides:

"700—Aviation Fuels—Oils and Lubricants:

A. An oil company wishing to furnish their products on the Airport, must first obtain a privilege for such a right from the Air Board.

B. There shall be a charge for the privilege of doing business on the field or Airport and the charge for this privilege to do business will be determined by agreement with the Air Board and the Oil Company, and this privilege charge will be payable on all products delivered to the Airport."

On November 27, 1968, Standard received a written order from the Board to pay 2½¢ per gallon on all aviation fuels delivered to the airport facilities, effective December 1, 1968. There is no suggestion that the Board and Standard had "determined by agreement" such a charge as envisioned by the quoted 700B of the regulations. Neither is there any question that the terms of the agreement between Standard and Bridges would require Bridges to bear the 2½¢ impost if it is valid.

The invalidity of the 2½¢ charge was claimed for several reasons in circuit court. It is this court's conclusion that the 2½¢ charge, as presently undertaken, is invalid; and to the extent that the judgment of the circuit court so determined, the judgment will be affirmed. However, as will presently appear, this court is of the view that a portion of the circuit court's rulings was unnecessary to the determination of this litigation, and to the extent that the

circuit court judgment adjudicates such issues, it will be modified.

Clearly, the Board validly contracted with Bridges and authorized Bridges to arrange for the purveying of aviation fuels for the duration of the lease. The agreed rental was fixed at $400 per month. The Board's *ex parte* attempt to effectively raise the rent by imposing a 2½¢ charge on each gallon of fuel was clearly illegal and unenforceable as to Bridges, by the plain terms of the lease agreement.

Moreover, by the Board's own regulation 700B, the fixing of any such charge was a matter to be determined by agreement between the Board and any oil company, including Standard. Admittedly, no such agreement was made or attempted.

Standard had been granted a valid contract by Bridges. The authority for Bridges to grant that contract to Standard was clearly enunciated in the pact between the Board and Bridges.

Therefore, the Board undertook violation of its contract with Bridges and ignored its own regulation's requirement for determination of any such charge by agreement when it unilaterally announced imposition of the charge of 2½¢ per gallon of aviation fuel. These reasons were quite sufficient to warrant the circuit court's judgment that the attempted imposition of the charge is illegal in the existing circumstances.

Hence, it was unnecessary for the court to decide whether the attempted charge runs afoul of KRS 138.220 and KRS 138.565. Neither was it required that the court adopt and approve OAG 65–237 and OAG 69–3. These determinations by the circuit court were expressed in numbered paragraph 5 of the circuit court's "Findings of Fact and Conclusions of Law and Judgment."

Upon remand, all of numerical paragraph 5 of the judgment will be stricken from

the judgment, and as so modified, the judgment will be affirmed.

Amicus curiae and the litigants press for a decision determining whether such a charge as proposed by the Board contravenes KRS 138.220 and KRS 138.565, or runs afoul of Kentucky Constitution Section 230. In accordance with accepted principles of appellate practice, the court refrains from decision in these respects in view of the fact that the litigation is appropriately dispatched without reaching those questions.

Remanded for modification as directed, and as so modified, the judgment is affirmed.

All concur.